767 P.2d 608 (1989)
The DEPARTMENT OF REVENUE AND TAXATION OF the STATE OF WYOMING, Appellant (Petitioner),
v.
CASPER LEGION BASEBALL CLUB, INC. Appellee (Respondent).
CASPER LEGION BASEBALL CLUB, INC. Appellant (Petitioner),
v.
The DEPARTMENT OF REVENUE AND TAXATION OF THE STATE OF WYOMING, Appellee (Respondent).
Nos. 88-185, 88-186.
Supreme Court of Wyoming.
January 11, 1989.
Joseph B. Meyer, Atty. Gen., Peter J. Mulvaney, Deputy Atty. Gen., Sylvia Lee Hackl, Sr. Asst. Atty. Gen., Robert J. Walters, Asst. Atty. Gen., and Milo M. Vukelich, Asst. Atty. Gen., Cheyenne, for appellant *609 in Case No. 88-185 and appellee in Case No. 88-186.
Kenneth R. Marken, Casper, for appellee in Case No. 88-185 and appellant in Case No. 88-186.
Before THOMAS, URBIGKIT, MACY and GOLDEN, JJ., and GUTHRIE, J., Retired.
GOLDEN, Justice.
Appellant State of Wyoming Department of Revenue and Taxation (Department) appeals a district court decision granting appellee Casper Legion Baseball Club, Inc. (Legion) an exemption from state sales taxation. The district court's decision reversed the Department's administrative decision denying the exemption, but it denied Legion's motion for costs of a transcript and filing fees on reversal. The issue presented by the Department is whether the Legion is entitled to the exemption as a "charitable" organization under W.S. 39-6-405(a)(xiv) (May 1985 Repl.)[1] and W.S. 39-6-505(a)(vi) (May 1985 Repl.)[2]. Legion cross-appeals requesting an award of costs of the transcript and filing fees.
We affirm the district court in all respects.
Legion is a nonprofit corporation promoting and financing competitive baseball activities for youth in Casper and Glenrock, Wyoming. Any youngster meeting the age and jurisdictional requirements set by the National American Legion is eligible to try out for Legion teams. The Legion program provides physical, recreational, and moral benefits to young people in the two cities. Team members pay no registration fee, although they do pay a refundable uniform deposit. Legion generates income through private donations, admission charges, various fund raising activities, and profits from concession sales at the games. Legion's expenses include coaches' salaries, bus driver fees, bus maintenance, umpire fees, sundry travel and lodging expenses, and costs of administration and organization. Legion is qualified as a federal nonprofit organization exempt from federal income taxation.
In January 1987, Legion applied to the Department for a state sales taxation exemption of its concession sales and other fund raising activities involving sales. The Department's Manager of the Field Audit Section, Mr. Richard Hubbard, responded by letter. Hubbard denied Legion's request for an exemption saying Legion was not the kind of organization that qualified for an exemption under Wyoming statutes. Legion asked for reconsideration in early February 1987, and Hubbard again responded with a denial of Legion's request. Legion then filed an administrative appeal with the State Board of Equalization (Board), a hearing body within the Department. The Board heard the appeal on September 25, 1987, and affirmed Hubbard's decision.
Undaunted, Legion filed a petition for judicial review of the Board's final administrative decision with the District Court, Seventh Judicial District, in Casper, Wyoming, on January 7, 1988. After reviewing both parties' briefs and the record, the district court issued a May 26, 1988, order reversing the Board's decision but denying Legion's motion to recover its costs of a transcript and filing fees. The Department appealed from the district court's reversal of the Board decision to this court on June 6, 1988. Two days later, Legion cross-appealed seeking the above mentioned costs. The cases were consolidated for briefing by the clerk of this court.
We review a district court decision concerning an appeal from an administrative contested case by reviewing agency findings and conclusions under the statutory standard applied by the district court. See Employment Security Commission of Wyoming v. Laramie Cabs, Inc., 700 P.2d 399, 403-404 (Wyo. 1985). In this review we inquire whether agency findings and conclusions were shown to be either:

*610 (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
W.S. 16-3-114(c)(ii) (October 1982 Repl.). See also W.R.A.P. 12.09 and 12.11(a).
The issue here is whether the Department properly interpreted the meaning of "charitable" as used in the state taxation exemption statutes. If the Department improperly interpreted "charitable," we must review the facts in this record in light of the correct statutory interpretation.
Involved in this appeal are two statutory exemptions from state taxation. The first, W.S. 39-6-405(a)(xiv), provides for a state sales tax exemption for "[o]ccasional sales made by religious or charitable organizations for fund raising purposes for the conduct of regular religious or charitable functions and activities * * *." See also W.S. 39-6-405(a)(xii) (May 1985 Repl.). The second, W.S. 39-6-505(a)(vi), provides a state excise tax exemption for "[p]urchases made by religious or charitable organizations in the conduct of their regular religious or charitable functions." By administrative rule, the Department has also adopted a decidedly narrow interpretation of the word "charitable" as it is used in these statutes. Pertinent provisions of Department rules provide that:
(a) Qualified religious or charitable organizations are those determined by the State Tax Commission to be bona fide associations or corporations organized for and engaged primarily and substantially in religious or charitable activities, including worship, religious education and assisting poor, aged, disabled and infirm persons.
* * * * * *
(f) Purchases by civic organizations, service clubs and other organizations not organized primarily and substantially for charitable or religious purposes are not exempt from the tax.
Rules and Regulations of the Wyoming Tax Commission, Department of Revenue and Taxation, ch. III, § 57(a) and (f) at 31-32 (July 3, 1985).
The Department argues that the plain meaning of the word "charitable," does not extend an exemption to Legion because Legion is a private club that promotes its own interests without conferring a public benefit. This amounts to a restatement of the Board's conclusions of law that, although Legion's stated primary purpose is to foster good values and ideals in young people, the way it implements its program does not provide a general public benefit.
The Department ignores the plain language of the statute and focuses on the wrong aspect of the function of a charity. When interpreting a statute or provision we search for legislative intent. Department of Revenue and Taxation of the State of Wyoming v. Hamilton, 743 P.2d 877, 879 (Wyo. 1987). We always begin that search by focusing on the language of the legislative enactment, giving that language plain and ordinary meaning unless otherwise indicated. Schultz v. State, 751 P.2d 367, 370 (Wyo. 1988); Hamilton, 743 P.2d at 879; Mahoney v. L.L. Sheep Company, 79 Wyo. 293, 333 P.2d 712, 715 (1958).
We disagree with the Department's interpretation of the statutory language. Black's Law Dictionary defines "charitable" as including "every gift for a general public use, to be applied consistent with existing laws, for benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint." Black's Law Dictionary 212 (5th ed. 1979) (citing American Society for Testing and Materials v. Board of Revision of Taxes, Philadelphia County, 423 Pa. 530, 225 A.2d 557, 560 (1967)). Applying the plain meaning of "charitable," we find Legion's stated purposes *611 and activities qualify it for the state taxation exemptions. Legion is a young persons' baseball organization, open to all Casper and Glenrock youth falling within the proper age group. Although not all young people who try out make a team, all are given an equal opportunity to do so. As a result, Legion provides to young people who try out an annual opportunity to receive a positive physical, social, and moral experience through competitive sports and fulfills that opportunity for a number of those youth. This in turn provides a general public benefit to the Casper and Glenrock areas in terms of the physical, social, and moral well-being of the youth in those communities. The Department's argument that Legion must provide this experience for every youth who tries out does not fit within the plain meaning of "charitable" and is overly restrictive and unworkable. Taken to its logical end, that argument would require every "charitable" youth organization providing a general public benefit to provide that benefit to every child within its reach. The "charitable" exemptions would be eviscerated by such a restriction.
Likewise, we reject the Department's attempt to analogize Legion's activities to the activities described in Maxwell Memorial Football Club, Inc. v. Commonwealth, 18 Pa.Cmwlth. 464, 336 A.2d 460 (1975). In Maxwell, the primary activities of the organization seeking a state taxation exemption included conducting weekly luncheons featuring speeches by individuals involved in collegiate or professional football and awarding an annual trophy to an outstanding football player. 336 A.2d at 462. On appeal from the state tax department's denial of tax exempt status as a nonprofit charity, the Pennsylvania appellate court held that the football club was not a charity for state tax purposes. The appellate court held that neither the purpose nor the activities of the organization involved were shown to confer in more than an incidental way a general public benefit on youth of the community. The football club was basically a private organization designed to provide lunchtime entertainment for adults who liked to talk about football. Maxwell, 336 A.2d at 464.
Maxwell is factually distinguishable from this case. In fact, Legion presents the opposite side of the coin because it is an organization that allows all young persons who desire an opportunity to play organized baseball the chance to try out for a team. After tryouts, a number of youth from the community play organized baseball and learn social, moral, and physical values. Legion's purpose and activities confer a direct benefit on the general public and any benefit to private individuals in the organization is incidental at best. The facts in these two scenarios are completely different and the Department's analogy to the holding in Maxwell is incorrect.
A much better analogy can be drawn between Legion and the charity involved in Youth Tennis Foundation v. Tax Commission, 554 P.2d 220 (Utah 1976). In that case, the charity involved qualified for a state taxation exemption even though it restricted its support to a limited number of young people who played tennis in programs and tournaments receiving foundation money. The foundation qualified for the charitable state taxation exemption because it supplied services and benefits directly to young tennis players, and it did so to the public generally without regard for race, creed, or economic circumstances. Id. at 222.
In summary, in deciding if an organization is eligible for the Wyoming's "charitable" taxation exemptions, the Department should focus on whether the charity primarily engages in activities providing an indefinite number of persons in the general public with benefits designed to aid them in an educational, moral, physical, or social manner. The Department should also consider whether the charity provides access to those benefits in an equal and nondiscriminatory way. When that standard is applied to Legion, the state taxation exemptions must be granted. The district court was correct in reversing the Board's decision denying Legion's request for a state sales and purchase tax exemption.
*612 Legion does not fare as well in its cross-appeal of the district court's denial of costs for a transcript and filing fees. Legion argues that a party who appeals a final administrative order to the district court and receives a reversal should be able to recover costs as set out in W.R.A.P. 10.05, if this court affirms the district court. Legion speculates that the basis for the district court's denial of the costs and filing fees was that W.R.A.P. 12.01 through 12.12 provides an exclusive body of rules for petitions for review of final administrative decisions, and those rules do not contain a provision like W.R.A.P. 10.05, providing for costs to a petitioner who prevails on appeal from a district court reversal.
The Department echoes that argument. It also argues that Legion failed to cite any authority for its position that W.R.A.P. 10.05 is cumulative to W.R.A.P. 12.01 through 12.12 and that the doctrine of sovereign immunity prevents the awarding of costs for judicial review of an administrative action.
Whether the costs described in W.R.A.P. 10.05 are recoverable in this case is a question of law. We agree with the district court that W.R.A.P. 12.01 through 12.12 is the exclusive means of seeking judicial review of final administrative action. W.R.A.P. 12.01; and Board of County Commissioners of Teton County v. Teton County Youth Services, Inc., 652 P.2d 400, 410 (Wyo. 1982). Those rules as adopted by this court, set out specific procedures for obtaining such review and incorporate only specific portions of the other W.R.A.P. rules to that end. See, e.g., W.R.A.P. 12.10 and 12.11 (incorporating W.R.A.P. 2.12, 4.01 through 4.09, 5.01 through 5.12, and 6.01 through 6.02). They do not specifically incorporate W.R.A.P. 10.05, and they do not otherwise provide for recovery of costs in Legion's situation; consequently, Legion cannot recover those sums.
AFFIRMED.
GOLDEN, J., delivered the opinion of the court.
GUTHRIE, J., Retired, filed a concurring opinion.
GUTHRIE, Retired Justice, concurring.
I concur in the opinion. I do so with a feeling of discomfort and the thought that this ruling is oppressive to the Casper Legion Baseball Club when they are denied their costs. However, I cannot substitute my personal reactions for what appears to be the law.
It is both unfair and oppressive to force an aggrieved party to pay its own costs to secure a review and correction of an erroneous ruling by pursuing its appeal through both the trial court and this court. The trial court found this ruling arbitrary and capricious and we, by this affirmation, approve that ruling. Even a taxpayer is entitled to some protection from oppressive administrative action.
This is a matter which the rule-making power should forthwith consider and correct.
NOTES
[1] This provision is identical to the current codification in (Cum.Supp. 1988).
[2] See supra note 1.