**In re Order Dismissing Motion for Payment of Expenses**

**Mindi Hobson LONGFELLOW, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–26.**

Supreme Court of Wyoming.

Jan. 10, 1991.

---

Wyoming Public Defender Program: Leonard D. Munker, State Public Defender, and Barbara L. Lauer, Asst. Appellate Counsel, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., and D. Michael Pauling, Asst. Atty. Gen., for the state.

Roberta A. Coates, amicus curiae, for Laramie County, Wyo.

Before CARDINE, C.J.,* and THOMAS, URBIGKIT, MACY and GOLDEN, JJ.

THOMAS, Justice.

Responsibility for the payment of travel and related expenses, together with witness fees, for witnesses subpoenaed by an indigent defendant is the question raised in this appeal. The public defender, by mo-

* Chief Justice at time of oral argument.

tion, requested that these expenses be paid by Laramie County, but the district court refused to impose this expense upon the county, ruling instead that these expenses should be paid by the office of the public defender. The ruling of the district court was premised in part upon the fact that a state district attorney's office exists in Laramie County. We conclude that the requirement for payment of the expenses of witnesses subpoenaed for indigent defendants should have a uniform application statewide; those expenses should be borne by the counties; and the order of the district court is reversed with direction that the county be ordered to pay these expenses.

The state public defender, representing Mindy Hobson Longfellow, asserts this issue:

"The district court erred in determining that the public defender must pay fees and expenses for witnesses subpoenaed on behalf of indigent defendants tried in Laramie County."

The attorney general, representing Laramie County on this issue, rephrases the issue in the case in this way:

"Whether the district court properly dismissed appellant's motion to compel Laramie County to pay the fees and expenses of witnesses subpoenaed by the public defender on behalf of an indigent defendant?"

Laramie County appeared as an amicus curiae and, in its brief, stated the issue in the affirmative in this way:

"The district court did not err in determining that the public defender's office and not Laramie County must pay fees and expenses for witnesses subpoenaed on behalf of indigent defendants tried in Laramie County."

In 1989, the public defender was assigned to represent Mindy Hobson Longfellow, an indigent charged with serious felonies—second degree murder, and child

abuse. *See Longfellow v. State*, 803 P.2d 848 (Wyo.1990). In the course of representing Longfellow, the public defender filed a "Motion for Certificate for Process Compelling a Nonresident to Testify in Wyoming," which sought the production of a material witness from Fairbanks, Alaska. The motion requested that a subpoena issue in accordance with the statutory procedure, and the public defender also requested that Laramie County be compelled to pay all travel costs and fees in advance. The district court ordered that the subpoena should be issued, but the order was silent with respect to the requested payment of expenses. The witness whose appearance was sought did appear and testify for the defendant through a videotape deposition.

On the same day that the public defender filed the motion on behalf of Longfellow, the Laramie County attorney sent a letter to the district court in which it indicated that neither Laramie County nor the office of the district attorney could be held responsible for witness fees and mileage costs incurred by a witness sought by an indigent defendant. Laramie County took the position that the public defender, being the defense counterpart of the district attorney, should bear those expenses. At a subsequent hearing that was held to resolve the matter of these expenses, the fiscal officer for the public defender's office testified that the public defender had no legislative appropriation from which to pay such expenses. The public defender also submitted an informal opinion of the attorney general in which it was concluded that a county should pay all witness expenses and fees incurred on behalf of an indigent defendant. The district court then issued a decision letter in general agreement with the position adopted by the Laramie County attorney and, on January 8, 1990, entered its "Order Dismissing Motion for Payment of Expenses" providing:

"1. That Laramie County has no responsibilities to pay expenses in the above-entitled matter.

"2. That any and all expenses in the above-entitled matter must be borne by the Public Defender's Office."

It is important in the context of this case to recognize that only two Wyoming counties, Laramie County and Natrona County, have state district attorneys for criminal prosecution. *See* § 9–1–801, W.S.1977. The prosecution in all other counties is conducted by county and prosecuting attorneys. Historically, in prosecutions conducted by county and prosecuting attorneys, the counties generally have paid all expenses associated with witnesses subpoenaed on behalf of the state. In Laramie County, however, the district attorney budgets for fees for state witnesses and obtains a state legislative appropriation for those expenses.

In its motion, in the trial court, seeking the subpoena in payment of the expenses for the witness from Fairbanks, Alaska, the public defender relied in part upon Rule 20(b), W.R.Cr.P., which provides as follows:

"*Defendants unable to pay.*—The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and *the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the state.*" (Emphasis added.)

In addition to Rule 20(b), §§ 7–11–402 and 7–11–405, W.S.1977 (June, 1987 Repl.), address the matter of obtaining witnesses for indigent criminal defendants. Those statutes provide as follows:

"**§ 7–11–402. Subpoena of witnesses for indigent defendants.**

"(a) Upon application of a defendant and upon a satisfactory showing that the de-

fendant is financially unable to pay the fees of a witness and that the presence of the witness is necessary to an adequate defense, the court shall order that a subpoena be issued for service on a named witness and order that all fees and costs incurred be paid as provided by subsection (b) of this section.

"(b) If the court orders a subpoena to be issued under this section, *the costs incurred and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of witnesses subpoenaed in behalf of the state.*" (Emphasis added.)

"**§ 7–11–405. Summoning of person in another state to appear as witness in this state.**

"(a) If a person in any state, which by its laws has made provisions for commanding persons within its borders to attend and testify in criminal prosecutions in this state, is a material witness in a prosecution pending in a court of record in this state, a judge of the Wyoming court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. This certificate shall be presented to a judge of a court of record in the county in which the witness is found.

"(b) If the witness is summoned to attend and testify in the criminal prosecution in this state, he shall be paid or tendered payment for mileage for each mile traveled by the ordinary route to and from the court where the prosecution is pending and witness fees for each day that he is required to travel and attend as a witness at the same rate paid other witnesses under the laws of this state."

The rule and these statutes are consistent in providing that a witness subpoenaed on behalf of an indigent criminal defendant shall be reimbursed for expenses and paid witness fees in the same manner, and at the same rate, paid to witnesses for the state. Neither the rule nor the statutes addresses the source of such payments.

In this latter regard, § 7–11–403(a)(i), W.S.1977 (June 1987 Repl.), is pertinent, and it provides:

"(a) To the extent practicable and when not otherwise specifically provided, the provisions of the Wyoming Rules of Civil Procedure, the Wyoming Rules of Evidence and the [Wyoming] Code of Civil Procedure shall govern in criminal cases, relative to:

"(i) Compelling the attendance and testimony of witnesses; * * *."

Consistently, Rule 20(a), W.R.Cr.P., provides:

"*Civil Procedure Applicable.*—Except as otherwise provided, the provisions of the Wyoming Rules of Civil Procedure and the Code of Civil Procedure, relative to or compelling the attendance and testimony of witnesses, their examination and the administering of oaths and affirmations, * * * shall extend to criminal cases, so far as they are in their nature applicable."

Following this direction, we turn to § 1–14–102, W.S.1977, a provision in the Code of Civil Procedure. That statute defines the minimum witness fees that may be charged, and a succeeding section controls who or, more specifically, what entity is to pay these fees. Section 1–14–106, W.S.1977 (June 1988 Repl.), provides:

"**§ 1–14–106. Payment of fees in criminal cases.**

"In criminal cases where the fees prescribed are not paid by the defendant or the prosecuting witness, they shall be paid to the party entitled thereto by the county."

█ It is our conclusion that this latter statute, together with § 7–11–403(a)(i), W.S.1977, quoted above is dispositive. The clear manifestation of legislative intent is that the county should bear responsibility for those witness expenses and fees incurred in a criminal case and not paid by

either the defendant or the prosecuting witness. *See* Sections 7–11–402, 403, W.S. 1977; Rule 20(a) and (b), W.R.Cr.P. *See also Paravecchio v. Memorial Hospital,* 742 P.2d 1276 (Wyo.1987), *cert. denied* 485 U.S. 915, 108 S.Ct. 1088, 99 L.Ed.2d 249 (1980) (statutes relating to the same subject read together to ascertain legislative intent); *WYMO Fuels, Inc. v. Edwards,* 723 P.2d 1230 (Wyo.1986). The legislative language incorporated in these provisions is sufficient to encompass the witness costs incurred on behalf of Mindy Hobson Longfellow. The statute does not distinguish between those witnesses, witness fees, and expenses that occur on behalf of the state and those that occur on behalf of an indigent defendant. Furthermore, there is no exception for those counties in which prosecutions are conducted by the office of the district attorney.

The State of Wyoming, arguing on behalf of Laramie County, urges that the repeal of §§ 7–11–402, 403 and 404, W.S. 1977, in 1987, manifests a legislative intent to create a different rule. Section 7–11–402, W.S.1977 (repealed in 1987), provided as follows:

"**§ 7–11–402. Subpoena of witnesses; right of defendant to 2 witnesses at county expense generally.**

"In all criminal cases it shall be the duty of the clerk * * *, to issue writs of subpoena for all witnesses named there, * * *, which shall be served and returned as in other cases * * *. But no defendant shall have more than two (2) witnesses as of course, *at the expense of the county,* and to obtain such witnesses an affidavit must be filed with the clerk * * *, showing that such defendant so requiring said witnesses is without the means of procuring them at his own expense, whereupon the clerk shall issue such subpoena, * * * should any such defendant require more witnesses than the two (2) as above referred to, an affidavit of such defendant * * *, must be filed * * * stating that he is without the necessary means to procure them, * * *

should the court deem the expected evidence material to the defense, a subpoena for such as are deemed necessary by the court shall issue at public expense." (Emphasis added.)

Section 7–11–403, W.S.1977 (repealed in 1987), further provided:

"**§ 7–11–403. Two witnesses for defendant furnished at county expense in felony cases.**

"Any and every defendant in a felony case may have two (2) witnesses, as of course, *at the expense of the county* where the case is being tried." (Emphasis added.)

Section 7–11–404, W.S.1977 (repealed in 1987), provided:

"**§ 7–11–404. Additional witnesses for defendant at county expense.**

"Said defendant shall be entitled to two (2) or more witnesses in addition to the above * * *. And he shall be entitled to more witnesses in manner and form as now provided by law; * * *."

The current statutes no longer include language specifically requiring the county to pay the expense of witnesses called on behalf of an indigent criminal defendant. The argument of the State is that this omission, apparently intentional, demonstrates that the legislature now intends for all witness fees and costs incurred by an indigent defendant to be paid by the public defender. We cannot accept this contention.

■ There is ample support for the principles of statutory construction relied upon by the State. There is a presumption in law that an omission is intentional where particular words or terms appear in one provision, but not in another related provision. *Carroll By and Through Miller v. Wyoming Production Credit Association,* 755 P.2d 869 (Wyo.1988). Specifically, the "[o]mission of words from a statute must be considered intentional on the part of the legislature." *Carroll,* 755 P.2d at 873. *See Matter of Voss' Adoption,* 550 P.2d

481 (1976). There is a presumption that the legislature intends a change in meaning when it amends a statute by removing language. *Nylen v. Dayton*, 770 P.2d 1112 (Wyo.1989); *Wetering v. Eisele*, 682 P.2d 1055 (Wyo.1984); *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of Albany County*, 592 P.2d 1154 (Wyo.1979). Conceding these propositions of statutory construction, an omission by itself, even though intentional, is not sufficient to instruct with respect to the new meaning. *Nylen.* Added language also must be considered. *Cf. Sanchez v. State*, 751 P.2d 1300 (Wyo.1988) (statutory language read so that every word or phrase has meaning). In the provisions now before the court, the governing statute, while it did omit all words referring to the county, incorporates new language providing that witness fees incurred on behalf of an indigent defendant "shall be paid in the same manner in which similar costs and fees are paid in case of witnesses subpoenaed in behalf of the state." Section 7–11–402(b), W.S.1977 (June 1987 Repl.). Even conceding the omissions on which the State relies, there is no way to infer from the new language that the change intended by the legislature was to require the payment of these expenses and fees by the public defender. That office is not mentioned in the statute, and it does not pay costs and fees for witnesses subpoenaed on behalf of the State.

In addition, there is a pragmatic difficulty. Our rule is that the legislature does not intend futile acts. *See Stauffer Chemical Company v. Curry*, 778 P.2d 1083 (Wyo.1989); *Hamlin v. Transcon Lines*, 701 P.2d 1139 (Wyo.1985); *Wetering; Yeik v. Department of Revenue and Taxation*, 595 P.2d 965 (Wyo.1979). There would be an appropriation of funds from which payment could be made if the legislature intended the expenses and fees in issue to be paid by the public defender. The record not only fails to show that there was such appropriation, but there is specific testimony that there was not such an appropria-

tion. Furthermore, it would have been a simple task for the legislature to have explicitly guaranteed the result ordered by the district court by simply substituting the words "public defender" for the word "county" in the prior repealed statutes. That was not the approach taken. This court has no power to add to, or to substitute, words in the statute. *See Albany*, 592 P.2d 1154. *See also Thomson v. Wyoming In–Stream Flow Committee*, 651 P.2d 778 (Wyo.1982). That authority is vested in the legislature, and we will not, nor should we, encroach upon its proper authority. *See Barber v. State Highway Commission*, 80 Wyo. 340, 342 P.2d 723 (1959).

It would be as logical to interpret the controlling statutes and rules to require that the district attorney in Laramie County pay the fees and expenses engendered on behalf of the indigent defendants because that office is paying similar costs incurred on behalf of the state. That construction would closely track the new language in the applicable statutes. For the reasons set forth below, however, that analysis would not be valid, and the only viable rule is that witness fees and expenses incurred on behalf of an indigent defendant must be borne by the county. *See* Section 1–14–106, W.S.1977.

We presume that the legislature is aware of all existing law on a particular subject relating to a newly enacted or amended statute. *L.U. Sheep Company v. Board of County Commissioners of the County of Hot Springs*, 790 P.2d 663 (Wyo.1990). That presumption requires the conclusion that the legislature repealed the prior statutes referring to witness fees incurred on behalf of an indigent defendant, and adopted those now in force, with full knowledge of § 7–11–403(a)(i), W.S.1977, and § 1–14–106, W.S.1977. *Keser v. State*, 706 P.2d 263 (Wyo.1985); *Capwell v. State*, 686 P.2d 1148 (Wyo.1984); *Wetering*, 682 P.2d 1055. We, therefore, rely upon the premise that the legislature, since it neither repealed nor amended those two statutes

despite their clear and obvious impact on the matter at hand, did intend the result that we have reached. Whenever statutory construction is required, the object of this court is to effectuate the legislative intent. *Department of Revenue and Taxation of State of Wyoming v. Hamilton,* 743 P.2d 877 (Wyo.1987).

We also know that "[a]ll laws of a general nature shall have a uniform operation." Wyo.Const. art. 1, § 34; *Washakie County School District No. 1 v. Herschler,* 606 P.2d 310 (Wyo.1980), *cert. denied sub nom Hot Springs County School District No. 1 v. Washakie County School District No. 1,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 28 (1980). *See Nehring v. Russell,* 582 P.2d 67 (Wyo.1978). This rule demands that these statutes be applied uniformly throughout the state, whether prosecution is accomplished by the county and prosecuting attorney or the district attorney.

We, therefore, hold that the application of the rules of statutory construction relied upon by the State does not lead to the result that it urges, and we hold instead that in all counties in the State of Wyoming, including those having state district attorneys, the burden of paying expenses and fees incurred by witnesses subpoenaed on behalf of indigent criminal defendants is to be paid by the counties. The order of the district court is reversed, and this case is remanded for the entry of an appropriate order in accordance with the holding of this court.

URBIGKIT, C.J., filed a dissenting opinion.

URBIGKIT, Chief Justice, dissenting.

This court reverses the district court and affixes a significant expense of the operation of a state agency—the public defender—upon county government. This is done as a concept of implied intent to achieve uniformity. I agree with neither the concept of applied uniformity, nor the interpretation of the statute.

Fortunately, the expense presented here for which the county likely has no suffi-

ciently budgeted amounts will not bring the operation of Laramie County government to a halt. The county will probably not even have to borrow money to fund the criminal trial proceeding as is apparently the case with Sheridan County's death penalty case, if press reports are accurate.

Unsatisfied by the comprehensive and scholarly analysis provided in the majority opinion, I remain convinced that the district court was right in initial decision which assessed legislative intent to eliminate county responsibility to fund the public defender costs in counties where the state was already funding prosecutorial costs. This is the uniformity that I would observe as the developed plan of the legislature explicitly provided by the change in statute to delete the words "at county expense" from W.S. 7–11–402(b). *Nylen v. Dayton,* 770 P.2d 1112, 1116 (Wyo.1989); *Wetering v. Eisele,* 682 P.2d 1055, 1061 (Wyo.1984); *State ex rel. Albany County Weed and Pest Dist. v. Board of County Com'rs of Albany County,* 592 P.2d 1154, 1157 (Wyo. 1979); *Brown v. State,* 590 P.2d 1312, 1314 (Wyo.1979).

The power to enact laws for Wyoming state government is invested by the Constitution in its legislature. The legislature assumes fundamental responsibilities for three required activities: pass appropriation bills to maintain government, Wyo. Const. art. 3, § 34; provide for education, Wyo.Const. art. 1, § 23; Wyo.Const. art. 7, § 1; Wyo.Const. art. 21, § 28; and maintain order and societal responsibility to be provided by a properly funded and organized justice delivery system, Wyo. Const. art. 5, § 1; Wyo.Const. art. 10, § 2. *See State v. Langley,* 53 Wyo. 332, 84 P.2d 767 (1938) and *State v. Sherman,* 18 Wyo. 169, 105 P. 299 (1909).

Within two if not three of those basic responsibilities are found funding and structural responsibility for the prosecution of criminal conduct and the protection of the citizens of the state from those who would commit criminal acts. This responsibility for public welfare constitutes one of

**1390**

the basic constituents of state government in a federal system. Within the prosecution and protection obligation and requirement is to be found preparation and trial time witness expenses. The criminal justice delivery system performs properly only when both prosecutors and defense counsel are provided adequate financial support to have the tools of advice and testimony to do a proper job. *Only the legislature can provide those financial requirements.* Wyo.Const. art. 3, § 35. It is an obligation that applies equally to prosecution and defense.[1] Wyo.Const. art. 1, § 10; *State v. Gallegos,* 384 P.2d 967 (Wyo.1963). *Cf. Hoem v. State,* 756 P.2d 780 (Wyo.1988).

It is also fortunate that the issue of witness fees for public defender witnesses is being brought to the surface at this time. One way or another the legislature will immediately, by action or inaction, decide where these kinds of expenses for crime prosecution will be paid within government. The political realities do not end there since if the source should be the county, as this court's majority now determines by interpretation of legislative intent, then only the legislature has the power to make sufficient basic allocations of public funding from which the county can pay. It is also my persuasion that the legislature recognized this obligation for at least two counties by changes in legislation.

The decision whether the responsibility is met directly by the state funding or indirectly through legislative provisions to provide adequate revenue resources for county government is peculiarly the legislative choice. With our present decision, the problem has to now be faced in twenty-three counties, including the recognition that where prosecutorial expenses are provided by the state, an equivalency of re-

sources for the public defender is also constitutionally required. Wyo.Const. art. 1, § 10. Equal protection and due process are not inane abstract concepts for academicians to discuss and society to reject. These provisions quantified in the Wyoming Constitution are the essence of our state government. *Holm v. State,* 404 P.2d 740 (Wyo.1965).

Whatever way is chosen by the legislature, adequate support is a constitutional imperative to meet its responsibility for public welfare, including crime prevention and punishment. Inaction hereafter instead of direct decision will serve that fundamental duty most inefficiently. The use of state agency budgeting to impose financial obligations on county government or city government without analysis and substantive decision on basic issues of government serves public welfare in crime prevention and punishment even less efficiently. Contrary to what this court's majority apparently suggests, the appropriation process cannot be substituted in constitutional criteria and bill content limitations for substantive legislation. Wyo.Const. art. 3, § 24; Wyo.Const. art. 3, § 26.

I dissent in belief that no laws exist placing this expense as a financial burden on Laramie County. I write to stress a decisional requirement of the legislature, whether by action or inaction, which may determine that a fundamental responsibility of law enforcement should be charged to county government. Uneven prosecution mandated by overwhelmed financial burdens may be the inevitable result in some counties. The criminal justice system in well-funded Campbell County is far different in both capacity and function than compared to Niobrara County, and for that matter, Laramie County, with its low as-

1. There is no secret why many complex prosecutions today are venued only in federal courts. The federal government is willing to provide money for investigation, staff, costs and expenses to do a quality prosecution that state governments, to a significant extent, cannot or do not provide. Federalism comes to mean the federal government where state government starves justice delivery system agencies' noncompetitiveness in a modern world of complex and expensive criminal trial characteristics.

sessed valuation to population ratio.[2]

The short sad life and untimely death of Christopher Hobson followed by criminal conviction of his mother, Mindi Hobson Longfellow, emotionally and moralistically illustrates an excellence of prosecution, diligence and expertise in defense as a proper constituent of the delivery of justice. *Longfellow v. State*, 803 P.2d 848 (Wyo. 1990) The continued high level of effectiveness of the criminal justice processes will require adequate funding, and one that I perceive to be, directly or indirectly, a responsibility of our entire state. However, the case of *Longfellow* is history. What will happen in other areas of the state or again in Laramie County during the next biennium and thereafter is the real question now presented by this appeal involving apportionment and allocation of responsibilities for the necessary support to provide an efficiently operating justice delivery system.

Whatever pathway the legislature may choose, action or inaction, the responsibility for adequate funding remains as one of that body's fundamental responsibilities. I believe we now reverse one step the legislature has already taken, but inevitably the big decision will remain for action in the Capitol. One way or another, the critical budgeting decision will be to provide an effective justice delivery system and that obligation will remain. At present, by ignoring the change found in agency history and disregarding the deletion in statute we "amend the statutory scheme from the bench."

Consequently, with improvidence in statutory interpretation exhibited and a judicially provided step backwards for adequacy of justice system funding then provided, I respectfully dissent.

---

**2.** It is recognized that the cost funding problem for criminal proceedings has received recent legislative attention, but a firm decision by enacted statute has not been achieved.

I would agree with appellee in its excellent historical analysis of the origin and development of the office of public defender in statement:

> Statutes must be construed with a sensitivity to the historical setting surrounding their enactment, the public policy of the state, and other prior and contemporaneous facts and circumstances. *State ex rel. Motor Vehicle Division v. Holtz*, 674 P.2d 732, 736 (Wyo. 1983).

\* \* \* \* \* \*

\* \* \* Statutes must be read in light of the discerned purposes of the legislative act of which they are a part and those acts relating to the same general subject. *Mauler v. Titus*, 697 P.2d 303, 307–08 (Wyo.1985).