**In the Matter of the Worker's Compensation Claim of Elmer DURAN, An Employee of Aabalon Moving Services:**

**Elmer DURAN, Appellant (Petitioner),**

**v.**

**AABALON MOVING SERVICES; and State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division, Appellees (Respondents).**

No. 96–59.

Supreme Court of Wyoming.

Jan. 21, 1997.

Joseph D. Selby, Cheyenne, for Appellant.

George Santini of Santini Law Offices, Cheyenne, for Appellee Aabalon Moving Services.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Jennifer A. Evans, Assistant Attorney General, Cheyenne, for Appellee State ex rel. Wyoming Workers' Safety and Compensation Division.

* Chief Justice effective July 1, 1996.

Before TAYLOR, C.J.,* THOMAS, MACY and LEHMAN, JJ., and STEBNER, District Judge.

STEBNER, District Judge.

Appellant, Elmer Duran (Duran), appeals the denial of worker's compensation benefits for a herniated disk. The hearing examiner issued an order denying benefits, finding that Duran had failed to prove the compensability of his back injury. Duran subsequently filed a petition for review to the district court, which was certified to this court pursuant to W.R.A.P. 12.09(b).

We affirm.

## I. ISSUES

Duran presents the following issues:

I. Whether the opinion of a witness is in itself substantial evidence on which to base a finding if the opinion assumes facts not in evidence and is the only evidence to support the finding.

II. Whether the Appellant met his burden of proof that he suffered a back injury in the course of his employment.

Appellee, Aabalon Moving Services, frames the issue as:

Is there substantial evidence to support the hearing officer's finding that Appellant did not meet his burden of proof that he sustained a work related back injury?

Appellee, State ex rel. Wyoming Workers' Safety and Compensation Division (Division), states the issue as:

Whether the record supports the Office of Administrative Hearings' determination that Claimant failed to prove that his back injury, for which he sought workers' compensation benefits, arose out of and in the course of his employment.

## II. FACTS

Duran, a furniture mover employed by Aabalon Moving Services, was injured on April 22, 1994. He was carrying a twenty to thirty pound box when he tripped on a crack

or depression in the cement floor and twisted his left ankle. He returned to work the next day, but did no heavy lifting.

On April 25, 1994, due to continuing discomfort, Duran went to the emergency room at United Medical Center West in Cheyenne, Wyoming where he was diagnosed as suffering from a sprained ankle and was referred for further treatment to Dr. Davis, an osteopathic surgeon who had previously treated Duran. The next day, Duran completed the Division's injury report noting only an injury to his left foot.

Dr. Davis examined Duran on April 28, 1994, at which time Duran told Dr. Davis that he had twisted his left ankle at work. Dr. Davis placed a short cast on Duran's left ankle, which was removed on May 25, 1994. Upon the recommendation of Dr. Davis, Duran contacted Walynn Smith (Smith), a licensed physical therapist, who treated Duran three times a week from May 31 until July 1, 1994. Within the first few weeks of therapy, Duran began to complain to Smith of pain in his hip area. On June 6, 1994, Duran filed an amended injury report which identified injury not only to his foot, but his leg and back as well.

Dr. Davis' records reflect that on June 8, 1994, Duran informed Dr. Davis that he had injured his back when he hurt his ankle, and "that it started really bothering him when he was doing his exercises for the ankle." Dr. Davis conducted an examination as a result of Duran's complaint, but found no indication that the pain was related to the work injury. Duran again complained to Dr. Davis of pain in his hip area on June 27, 1994. At that time, Dr. Davis noted that he did not believe the pain was related to the ankle injury and advised Duran to return to work the next week.

On July 1, 1994, the day after he was to return to work, Duran was examined by Dr. Joseph C. Dobson at the University of Wyoming Family Practice Center. Duran told Dr. Dobson that he "twisted his ankle at work and broke it as well as had a little bit of back pain." Duran also told Dr. Dobson that he had experienced back pain previously, but that it had healed without medical attention. Dr. Dobson diagnosed "low back strain."

At his follow up visit, Duran again reported back pain and stated his belief that the physical therapy had contributed to the problem. Dr. Dobson then referred Duran to a colleague, Dr. Michael LeFever, for osteopathic manipulation.

Dr. LeFever began his treatment of Duran on July 14, 1994. Duran told Dr. LeFever that he had "fractured" his ankle in April and had experienced low back pain which had "waxed and waned" since that time, but had reached a plateau. On August 17, 1994, Dr. LeFever wrote a letter expressing his opinion, based on the July 14th examination, that Duran's lower back pain was "aggravated by his recent ankle injury."

The record contains no further medical treatment until February 1995. At that time, Duran again visited the University of Wyoming Family Practice Center where an MRI and X-rays revealed that Duran had a herniated disk.

Although Duran received benefits for the ankle injury, the Division denied Duran's claims for his back injury. A contested case hearing on the compensability of Duran's back injury was held on May 3, 1995. The hearing examiner denied Duran's claim, finding that Duran had failed to prove that he injured his back at work. On February 6, 1996, Duran's petition for review of the hearing examiner's decision was certified to this court pursuant to W.R.A.P. 12.09(b).

## III. STANDARD OF REVIEW

The oft-stated standard of review upon appeal of an administrative action is found in Wyo. Stat. § 16–3–114 (1990), which provides, in relevant part:

(c) * * * The reviewing court shall:

* * * * * *

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * * * * *

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

With respect to this standard, we recently reiterated:

> "Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions."

*Matter of Fisher*, 914 P.2d 1224, 1226 (Wyo. 1996) (*quoting Latimer v. Rissler & McMurry Co.*, 902 P.2d 706, 708–09 (Wyo.1995)). The party appealing the agency decision "'has the burden of proving the lack of substantial evidence to sustain the ruling of the agency.'" *Matter of Fisher*, 914 P.2d at 1227 (*quoting Jaqua v. State ex rel. Wyoming Workers' Compensation Div.*, 873 P.2d 1219, 1221 (Wyo.1994)). If the findings of fact are supported by substantial evidence, this court need only determine whether the conclusion is in accordance with law. If so, the conclusion is affirmed. *Wyoming Steel & Fab, Inc. v. Robles*, 882 P.2d 873, 877 (Wyo. 1994) (*quoting Employment Sec. Com'n of Wyoming v. W. Gas Processors, Ltd.*, 786 P.2d 866, 870–71 (Wyo.1990)).

## IV. DISCUSSION

■ The hearing examiner, in holding that Duran failed to meet his burden of proof, reasoned:

> There are too many conflicting stories concerning how Claimant allegedly hurt his back and the symptoms he suffered after the injury. The work that Claimant did for other employers is just as likely to have caused his condition as any work effort on April 22, 1994. The testimony of Dr. Davis, the original treating physician, and his opinions which are based upon a more reliable history and complete medical records are more persuasive than the opinions of the other two doctors.

Duran argues that Dr. Davis' testimony was without foundation and, therefore, the hearing examiner's conclusion is not supported by substantial evidence.

Duran alleges that Dr. Davis' testimony lacked foundation because Dr. Davis' opinion was based solely on his treatment of Duran prior to July 1994 and, therefore, is fundamentally infirm due to the failure to consider the opinions and findings of Drs. LeFever and Dobson or the complaints to Smith. Duran further claims that when his counsel cross-examined Dr. Davis using a hypothetical question which contained the "true facts" as revealed apart from Dr. Davis' treatment, Dr. Davis was forced to concede that Duran's back injuries were probably a result of "a twisting fall." Finally, Duran contends that the remaining medical evidence was more than sufficient to establish that the back injury was caused by the accident on April 22, 1994.

We first note that the record clearly reflects adequate foundation for Dr. Davis' opinions. There is no question that he was the treating physician immediately after the work related accident and that he personally examined Duran. The problem with Duran's remaining contentions is that the "true facts" presented in his hypothetical question are not necessarily the facts determined to be "true" by the hearing examiner. This is because the facts assumed in the hypothetical question reflect only Duran's version of his accident and injuries given at the hearing. The record, however, contains numerous inconsistencies between Duran's testimony, his previous statements, and the testimony of other witnesses.

On review, we consider the evidence in the light most favorable to the prevailing party. *Wyoming Steel & Fab, Inc.*, 882 P.2d at 876 (*quoting Sinclair Trucking v. Bailey*, 848 P.2d 1349, 1351 (Wyo.1993)). When sufficient ambiguities exist in the evidence to trigger the process of weighing the evidence and assessing the credibility of the witnesses, that task is for the hearing examiner, not an appellate court. *Matter of Fisher*, 914 P.2d at 1230.

At the administrative hearing, Duran testified he stepped on the crack, twisted his ankle and fell to the floor, hitting his left hip,

knee and shoulder. Duran further testified that after his fall, he was unable to get off the ground for ten to fifteen minutes due to extreme pain, including pain in his back.

There is ample evidence to the contrary. Mr. John Buchanan, the co-worker who was with Duran at the time of the accident, testified that out of the corner of his eye he saw Duran stumble, heard him yell out, and then saw him standing up. Mr. Buchanan said he did not see Duran fall and he did not think Duran could have been on the ground for long if he did fall. Mr. Buchanan also testified that in March 1995, Duran asked him to testify that Duran's back had been hurt on April 22, 1994, but that he could not so testify because he "didn't know he hurt his back."

Duran's own prior reports to medical personnel also raise doubts as to the veracity of his testimony during the contested case hearing. At the emergency room and at Duran's first visits with Drs. Davis, Dobson and LeFever, Duran never mentioned that he fell. He reported only that he had stepped on a crack and twisted (broke, fractured) his ankle. Similarly, although at the hearing Duran stated that he experienced back pain immediately after twisting his ankle, no back pain was reported to anyone until over a month later. Moreover, the impact of Duran's prior history of back pain reported to Drs. Dobson and LeFever was confusing at best.

A review of the entire record reveals conflicting stories about the accident, how Duran hurt his back, what symptoms occurred after the incident, and the timing of the symptoms. Faced with this evidence, the hearing examiner found that the testimony of Dr. Davis, based upon Duran's medical history and treatment immediately after the incident, was most persuasive. We will not substitute our judgment for that of the hearing examiner as long as the record contains substantial evidence to support his resolution of the conflicts in the record. *Little America Refining Co. v. Witt*, 854 P.2d 51, 58 (Wyo.1993) (*quoting Workers' Comp. Div. v. Hollister*, 794 P.2d 886, 891 (Wyo.1990)). We find that in this case, the record contains substantial evidence to support the hearing examiner's conclusion.

## V. CONCLUSION

The hearing examiner's conclusion that Duran failed to meet his burden of proving the compensability of his back injury is consistent with the evidence of record as evaluated by the hearing examiner. The hearing examiner's determination is supported by substantial evidence. Affirmed.