**BASIN ELECTRIC POWER COOPERATIVE, Appellant(Plaintiff),**

v.

**Linda BOWEN, Platte County Treasurer, in her official capacity; and the Board of County Commissioners for Platte County, Appellees(Defendants).**

No. 97–336.

Supreme Court of Wyoming.

May 10, 1999.

504

W. Perry Dray and Brandin Hay of Dray, Thomson & Dyekman, P.C., Cheyenne, Wyoming, for Appellant.

David F. Palmerlee of Palmerlee and Durrant, Buffalo, Wyoming; and Bruce A. Hellbaum of Jones, Jones, Vines & Hunkins, Wheatland, Wyoming, for Appellees.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

TAYLOR, Justice, Retired.

At issue in this case is the construction of Wyo. Stat. Ann. § 39–4–101(d) (Michie 1997) (the Escrow Statute),[1] which directs the county treasurer to place taxes paid under protest in an interest-bearing escrow account. Specifically, the parties disagree as to who is to make the final determination of the amount placed in escrow when the county and the taxpayer dispute the amount that is "under appeal." The district court concluded the duties of the county treasurer as set forth in Wyo. Stat. Ann. § 39–2–201(d) (Michie Repl.1994) (the Estimate Statute) indicate the legislative intent that the county treasurer determine the amount designated for the escrow account. Finding no controlling relationship between the Estimate Statute and the Escrow Statute, and construing the Escrow Statute in favor of the taxpayer, we reverse and remand.

## I. ISSUES

Appellant, Basin Electric Power Cooperative (Basin), presents three issues for review:

I. Whether Wyo. Stat. § 39–4–101(d) (repl.vol.1997) requires the Platte County Treasurer to deposit "that protested amount under appeal" as designated by Basin Electric Power Cooperative into an interest-bearing escrow account?

II. Whether the Platte County Treasurer's duties pursuant to Wyo. Stat. § 39–4–101(d) (repl.vol.1997) are wholly ministerial, and not discretionary, such that a writ of mandamus should issue to require her to deposit "that protested amount under appeal" as designated by Basin Electric Power Cooperative into an interest-bearing escrow account?

III. Whether preliminary and permanent injunctive relief lies against the Platte County Treasurer to prevent her from depositing less than "that protested amount under appeal" as designated by Basin Electric Power Cooperative into an interest-bearing escrow account?

Appellees, Linda Bowen as Platte County Treasurer (County Treasurer) and the Board of County Commissioners for Platte County (Board of Commissioners), perceive the issues as follows:

I. Does Wyoming Statute 39–2–201(d) provide the mechanism for the County Treasurer to determine the "amount under appeal" to be deposited in escrow pursuant to Wyoming Statute 39–4–101(d)?

II. Can Basin Electric Power Cooperative ("Basin") obtain a preliminary injunction when it cannot show irreparable injury or emergency, but can only show a speculative future delay in the recovery of money?

III. Can Basin obtain a Writ of Mandamus without showing that the alleged duty of the Platte County Treasurer was clear, undisputable, ministerial and when such act would not be in the public's best interest?

## II. FACTS

In 1994 and 1995, Basin paid a portion of its assessed taxes under protest and requested the protested amounts be placed into an escrow account pursuant to the Escrow Statute, Wyo. Stat. Ann. § 39–4–101(d). In November 1996, Basin again submitted a portion of its tax payment under protest, which amount was placed into an escrow account. After the amount was deposited, however, the Chairman of the Board of Commissioners wrote to Basin asking for a detailed explanation of why Basin's protested amount increased for 1996, when the assessed fair market value had decreased from the previous year. Basin responded by asserting that

---

* Chief Justice at time of oral argument; retired November 2, 1998.

1. The 1998 revisions to the taxation and revenue statutes repealed Wyo. Stat. Ann. § 39–4–101(d) and recodified this provision at Wyo. Stat. Ann. §§ 39–13–109(f); 39–13–111(b); 39–14–109(f)(i); 39–14–209(f)(i); 39–14–309(f)(i); 39–14–409(f)(i); 39–14–509(f)(i); 39–14–609(f)(i); and 39–14–709(f)(i).

they were not required to give an explanation, but offered the following information:

[T]he calculation was made according to the same methodology Basin Electric has used in the 1994 case appealed to the State Board of Equalization * * *. The reason the escrowed amount is higher is because Basin Electric's value has declined since 1994, using the same methodology. Two factors that have contributed to that decline have been higher costs of capital and lower net operating income since the 1994 assessment.

The Board of Commissioners subsequently notified Basin that due to Basin's failure to provide more detailed information, the Board of Commissioners had applied Basin's 1994 methodology to the current assessment and determined the amount protested by Basin exceeded any possible appellate recovery for Basin by $197,656.00. On that basis, the County Treasurer removed the excess sum from the escrow account and distributed it to the tax district.

When Basin's demand to return the disbursed escrow amounts went unheeded, Basin brought an action seeking declaratory judgment. Basin claimed that the County Treasurer's removal of the funds from the escrow account was a clear violation of the Escrow Statute, and requested a writ of mandamus ordering the County Treasurer to replace the funds into the escrow account. Basin further sought an injunction prohibiting the County Treasurer from removing any protested amounts from the escrow account in the future.

The district court denied Basin's request for a preliminary injunction and a writ of mandamus, and the case proceeded to trial. After hearing the matter, the district court concluded that the County Treasurer's estimate of the amount under appeal pursuant to the Estimate Statute, Wyo. Stat. Ann. § 39-2-201(d), governs the amount which must be deposited into an interest-bearing escrow account. The district court reasoned:

The key to the resolution of this issue is the precept that courts are to review statutes in the light of their object and purpose, and then to interpret them so as to achieve that purpose. * * * It cannot ser-

iously be controverted that the unambiguous purpose of W.S. § 39-4-101(d) is to preserve for a taxpayer that portion of its taxes that may be refunded in the event of a successful appeal. It is simply unreasonable to ascribe to the legislature an intent to require the escrow of amounts that are not, in fact, subject to the protest or appeal. This reading of the statute is not only consistent with reason, it is also consistent with the county treasurer's statutory duty upon receipt of a taxpayer's objection to a tax assessment[.]

This timely appeal followed.

## III. STANDARD OF REVIEW

■ Statutory interpretation is a question of law and is reviewed *de novo*. *Chevron U.S.A., Inc. v. State*, 918 P.2d 980, 983 (Wyo. 1996).

"We endeavor to interpret statutes in accordance with the Legislature's intent. We begin by making ' "an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection." ' * * * "

* * * "When the court determines, as a matter of law, that a statute is clear and unambiguous, it must give effect to the plain language of the statute and should not resort to the rules of statutory construction." * * * If, on the other hand, the Court determines that a statute is ambiguous, it may use extrinsic aids of statutory interpretation to help it determine the legislature's intent.

*State ex rel. Wyoming Workers' Safety and Compensation Div. v. Bruhn*, 951 P.2d 373, 376 (Wyo.1997) (*quoting State Department of Revenue and Taxation v. Pacificorp*, 872 P.2d 1163, 1166 (Wyo.1994) and *Lancto v. City of Rawlins*, 892 P.2d 800, 802–03 (Wyo. 1995)).

■ The question of whether an ambiguity exists is a matter of law to be determined by the court. *Board of County Com'rs of County of Laramie v. Laramie County School Dist. Number One*, 884 P.2d 946, 955 (Wyo.1994) (*quoting Allied–Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 219–20 (Wyo.1991)). A statute

is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations; it is " 'unambiguous if its ·wording is such that reasonable persons are able to agree to its meaning with consistency and predictability.' " *Board of County Com'rs of County of Laramie*, 884 P.2d at 955 (*quoting Allied–Signal, Inc.*, 813 P.2d at 219–20).

## IV. DISCUSSION

### A. THE ESCROW STATUTE

Basin argues that the language of the Escrow Statute is plain and unambiguous, and, therefore, we need not look to other provisions, such as the Estimate Statute, to determine its meaning. *State v. Stovall*, 648 P.2d 543, 544 (Wyo.1982). In support of this argument, Basin relies on *Thunder Basin Coal Co. v. Study*, 866 P.2d 1288, 1290 (Wyo.1994), where we held that Wyo. Stat. Ann. § 39–4–101(d) (Michie Cum.Supp.1993) unambiguously requires the submission of only the amount of disputed taxes. The county treasurer had no authority to demand interest and penalty payments as a precondition to placing the disputed taxes into an escrow account.

Contrary to the assertions of Basin, however, *Thunder Basin Coal Co.* is not dispositive of the issue before us. Here, it is not interest and penalties, but the actual amount under appeal which is in dispute. Further, in 1994, the legislature modified the Escrow Statute,[2] adding the following underlined language:

> (d) If taxes are paid under protest *to the extent of and* due to an appeal pending before the state board of equalization *or any court of competent jurisdiction,* the county treasurer shall deposit *that protested* amount under appeal in an interest bearing escrow account ·and withhold distribution until a final decision on the appeal has been rendered. *To the extent the* taxpayer prevails in the appeal, the county

treasurer ·shall refund that amount under appeal, plus interest earned *thereon,* to the taxpayer within thirty (30) days from the day the final decision is rendered. *If the taxpayer pays to the county an amount in excess of the protested amount under appeal, the excess shall be distributed as provided by law.*

Wyo. Stat. Ann. § 39–4–101(d).

■ It is clear that the statute mandates the county treasurer to deposit "that protested amount under appeal" into an interest-bearing escrow account. It is equally clear that the "protested amount" is defined and limited by the phrase "to the extent of and due to an appeal * * *." This limitation is underscored by the legislature's use of the specific term "protested amount *under appeal* " throughout the provision, rather than merely "that protested amount." At the same time, the addition of the phrase "or any court of competent jurisdiction" extends the time during which the protested amount may remain in the escrow account to include the time for an appeal from the Board of Equalization's decision. Thus, the escrowed amount is not disbursed until all appeals are exhausted.

The difficulty is that nothing in the statute directly addresses the procedure to be used if the taxpayer and the county treasurer disagree as to the amount "under appeal." It is not so much that the statute is ambiguous as to its terms, but that the statute does not expressly ·contemplate the current dispute. We are left to determine how, in light of the taxation statutes as a whole, the legislature would wish to resolve the question. In the words of Justice Brown:

> Statutory construction is a fertile source of litigation for parties and a fertile source of frustration for courts. * * * Although courts resort to numerous rules of statutory construction to determine legislative intent, they are often reduced to drawing

---

**2.** When considered in *Thunder Basin Coal Co.,* 866 P.2d at 1290, Wyo. Stat. Ann. § 39–4–101(d) (Michie Cum.Supp.1993) read as follows:

"(d) If taxes are paid under protest due to an appeal pending before the state board of equalization, the county treasurer shall deposit the amount under appeal in an interest bearing escrow account and withhold distribution until a final decision on the appeal has been rendered. If the taxpayer prevails in the appeal, the county treasurer shall refund the amount under appeal, plus interest earned, to the taxpayer within thirty (30) days from the day the final decision is rendered."

what they hope is a logical inference about the legislature's intent, knowing that if their inference is wrong, the legislature will eventually correct it. We are in that position here. We will discuss some of the accepted rules of statutory construction because they offer us help. They are, nevertheless, not determinative; we are left to make what we think is a logical inference of the legislative intent.

*Stovall,* 648 P.2d at 545.

■ The fundamental rule in statutory construction is to ascertain, if possible, what the legislature intended by the language used, viewed in light of the objects and purposes to be accomplished. *Id.* at 545. It cannot be questioned that the purpose of the Escrow Statute is to preserve for the taxpayer, in an interest-bearing escrow account, the entire portion of levied taxes to which the taxpayer objects. Basin argues that in the absence of language to the contrary, the taxpayer is the sole judge of that protested amount. Indeed, Basin goes so far as to say that it was free to pay the entire amount of the levied tax under protest because the issue on appeal is the methodology used by the Department of Revenue in its assessment. Therefore, if the appeal is successful, the entire assessment will be overturned and the levied tax will be void. Consequently, even though Basin does not dispute that it owes some tax, it reasons that the amount under appeal in this case is all of the taxes levied under the Department of Revenue's erroneous assessment methods.

On the other hand, the Board of Commissioners contends that if Basin is allowed to designate any amount it chooses as the protested tax under appeal, without explanation, the Board of Commissioners has no way to predict its tax income for budgeting purposes. Given the extended amount of time the protested taxes may remain unavailable to the county, the unbridled opportunity to designate the entire amount of tax allows the

taxpayer to hold the county hostage. The Board of Commissioners insists that the legislature could not have intended this result, and posits that the only reasonable solution is to find that the "amount under appeal" is governed by the Estimate Statute, Wyo. Stat. Ann. § 39–2–201(d). That provision states:

(d) Following determination of the fair market value of property the department shall notify the taxpayer by mail of the assessed value. The person assessed may file written objections to the assessment with the [state] board within thirty (30) days of the date of postmark and appear before the board at a time specified by the board. *The person assessed shall also file a copy of the written objections with the county treasurer of the county in which the property is located, who shall notify the county assessor and the board of county commissioners, with an estimate of the tax amount under appeal based upon the previous year's levy.*

Wyo. Stat. Ann. § 39–2–201(d) (emphasis added). Because the Escrow Statute is silent regarding the computation of the "amount under appeal," the Board of Commissioners argues that the Estimate Statute, which provides instruction on how to do so,[3] becomes the only viable means of fairly accounting for the needs of the county and the fiduciary duty of the County Treasurer in conjunction with the concerns of Basin.

■ When we are confronted with two possible but conflicting conclusions, we will choose the one that is most logically designed to cure the mischief or inequity that the legislature was attempting to accomplish. *Stovall,* 648 P.2d at 546. Here, the legislature designed a remedy by which the taxpayer could protect the entire amount that it believed to be wrongfully taxed, and have such amount returned within thirty days if the taxpayer is correct. The Board of Commissioners' method of estimating the amount

---

**3.** The formula espoused by the Board of Commissioners is as follows: If the tax levy from the preceding year has not been protested, the County Treasurer's estimate of the amount under appeal is merely a calculation of the difference between the last tax levy paid without protest and the amount which will be levied in the current year. If part of the last year's tax levy was paid under protest and the matter remains under appeal, then the amount to be escrowed will be the last year's escrow amount increased or decreased by the proportionate tax levy disparity from the previous year.

under appeal does not take into account the possibility that the current appeal is not based on the same set of facts as the previous year's tax assessment or that other factors have affected value. Thus, even though the taxpayer may legitimately object to an amount which exceeds the calculations of the county treasurer under the Estimate Statute, the taxpayer's remedy is constricted.[4]

 This is not the intent of the Escrow Statute. A basic rule of statutory construction is that courts may try to determine legislative intent by considering the type of statute being interpreted. *Id.* Tax statutes are to be construed in favor of the taxpayer and are not to be extended absent clear intent of the legislature. *Chevron U.S.A., Inc.,* 918 P.2d at 985. Reading Wyo. Stat. Ann. § 39–4–101(d) in the light most favorable to Basin, we cannot agree that the Estimate Statute defines the amount under appeal which must be placed into escrow.

> Omission of words from a statute must be considered intentional on the part of the legislature. * * * Moreover, where the legislature has specifically used a word or term in certain places in a statute and excluded it in another place, the court should not read that term into the section from which it was excluded.

*Carroll By and Through Miller v. Wyoming Production Credit Ass'n,* 755 P.2d 869, 873 (Wyo.1988). The Escrow and the Estimate statutes were both modified in 1994. It would have been a simple task for the legislature to have explicitly guaranteed the result urged by the Board of Commissioners by merely referring to the allegedly controlling Estimate Statute or adding the word "estimated" to the amount under appeal in the Escrow Statute.[5] The legislature chose not to do so. "This court has no power to add to,

or to substitute, words in the statute. * * * That authority is vested in the legislature, and we will not, nor should we, encroach upon its proper authority." *Longfellow v. State,* 803 P.2d 1383, 1388 (Wyo.1991). Thus, we hold that the legislature intended the protested amount be designated by the taxpayer and is not controlled by the County Treasurer's estimate made five months earlier.

 This said, it is necessary to address Basin's interpretation of its duties under the statute and the "amount under appeal." The final sentence of the Escrow Statute, also added in 1994, instructs the County Treasurer that "[i]f the taxpayer pays to the county an amount in excess of the protested amount under appeal, the excess shall be distributed as provided by law." Wyo. Stat. Ann. § 39–4–101(d). "[A]n omission, by itself, even though intentional, is not sufficient to instruct with respect to the new meaning. * * * Added language also must be considered." *Longfellow,* 803 P.2d at 1388. Every word in legislation is presumed to have a meaning, and a statute should be construed so that no part will be inoperative or superfluous. *Stovall,* 648 P.2d at 547. Statutes must be interpreted in a fashion which permits an agency to carry out its legislative mandate. *Wyoming State Tax Com'n v. BHP Petroleum Co., Inc.,* 856 P.2d 428, 436 (Wyo.1993).

 A county treasurer has the duty to collect taxes and other monies belonging to the county and pay over to the proper entity any monies received. *Board of County Com'rs of County of Laramie,* 884 P.2d at 957. This duty must be carried out with reasonable skill, diligence, good faith and honesty. *Id.* A county treasurer acts as a

---

4. It is also noteworthy that Wyo. Stat. Ann. § 39–2–201(d) does not require the county treasurer to notify the taxpayer of the estimate which will limit the amount which may be paid under protest. *See Wyoming Bd. of Equalization v. State ex rel. Basin Elec. Power Co-op.,* 637 P.2d 248, 251 (Wyo.1981) (the hearing contemplated under Wyo. Stat. Ann. § 39–2–201 includes a right to notice). It appears that the taxpayer would not be notified of this limit until there was an attempt to protest more than the amount estimated by the county treasurer.

5. Further, there is a companion statute, utilizing the same language as Wyo. Stat. Ann. § 39–4–101(d), that allows the taxpayer to pay taxes under protest to the state, but the Board of Commissioners fails to point to any provision that gives the State Treasurer the authority to limit the amount which may be protested. *See* Wyo. Stat. Ann. § 39–1–311 (Michie 1997).

trustee in the management of funds held by that office on behalf of others. *Id.* In light of these duties, we cannot agree with Basin's position that the taxpayer has no responsibility to explain to the County Treasurer, in sufficient detail, the basis on which the taxpayer has designated a specific amount as a protested tax payment.[6] Nor can we interpret the "amount under appeal" to be governed by the form of the objection to the assessment rather than the difference between the tax levied and the taxpayer's objective calculations of its tax obligation.

While we construe the Escrow Statute to provide relief for Basin, it cannot be reasonably argued that the legislature intended the Board of Commissioners to forego its responsibility to the remainder of its citizens by accepting, without question, the designation of a "protested amount" which appears to be in excess of "the extent" of the appeal. Basin does not deny that it owes a significant amount of taxes for 1996. Indeed, Basin calculated that only a portion of its tax bill should be protested in 1996. Since the calculation must be made prior to its payment under protest, we see no reason why Basin cannot, or should not, share this information with the Board of Commissioners. We also find that an objection to the methodology of the state assessment does not excuse payment of those taxes which Basin believes would be owed if the correct methodology were used. Even if successful on appeal, the amount Basin believes owed for that period will not change if the case is remanded for reassessment. Consequently, the amount which is "to the extent of and due to an appeal" is the difference between Basin's objective calculation of its tax obligation and the tax which was levied.

■ In summary, we hold that the County Treasurer must deposit the amount protested by Basin into an interest-bearing escrow account. However, Basin is required to give a detailed explanation, if requested, regarding the calculation of the protested amount. Upon receipt of Basin's calculations, the County Treasurer may agree that the escrowed amount is proper or, if not, may proceed with a declaratory judgment action requesting the district court determine whether the protested amount is in excess of the amount under appeal. The merits of Basin's appeal are not to be decided at this time, but merely whether the protested amount is the difference between Basin's objective calculation of its tax obligation and the tax which was levied.

We are mindful that the resolution of this dispute places an extra burden on both Basin and the Board of Commissioners. We are confident, however, that if we have misconstrued the intention of the legislature in this matter, we will be corrected.

## B. WRIT OF MANDAMUS AND INJUNCTION

Mandamus is defined in Wyo. Stat. Ann. § 1–30–101 (Michie 1997) as "a writ issued in the name of the state to an inferior tribunal, a corporation, board or person commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station." "The writ must not be issued when there is an adequate remedy at law." Wyo. Stat. Ann. § 1–30–104 (Michie 1997). We have said:

> "[T]he writ of mandamus will issue only where the duty to be performed is ministerial and the obligation is peremptory and plainly defined. The law must not only authorize the demanded action but require it; and the duty must be clear and undisputable.
>
> * * *
>
> [I]n order to warrant the issuance of mandamus, not only must there be a legal right in the relator, but owing to the extraordinary and drastic character of mandamus

6. Basin's position is as follows: As the entire 1996 taxable assessed valuation notice to the taxpayer was appealed, the entire 1996 tax computed and levied by Platte County would have been the taxes to the extent of and due to the appeal. Although Basin was entitled to designate the entire amount, it decided to designate only a portion which it determined was the difference between the tax on the fair market value as computed by Basin, and the tax on the fair market value computed by the Department of Revenue. Basin was not obligated under the statute to do this, and therefore, was not obligated to tell the county how it determined the amount to be escrowed.

and the caution exercised by courts in awarding it, it is also important that the right sought to be enforced be clear and certain, so as not to admit of any reasonable controversy. The writ does not issue in cases where the right in question is doubtful."

*State ex rel. Sweetwater County School Dist. No. One v. Ohman,* 895 P.2d 49, 54 (Wyo. 1995) (*quoting LeBeau v. State ex rel. White,* 377 P.2d 302, 303 (Wyo.1963)).

 In light of our ruling above, the duty of the County Treasurer to deposit the amount protested by Basin is clear and certain. Until a court of competent jurisdiction absolves the County Treasurer of this duty by holding the amount placed in escrow is clearly in excess of the amount under appeal, the amount designated by Basin is presumed correct. The County Treasurer has no independent authority to disburse the funds in escrow.

 Moreover, the Escrow Statute clearly mandates the County Treasurer return the funds to Basin within thirty days of a successful final appeal. Were we to accept the Board of Commissioners' argument that Basin has an adequate remedy by allowing the Board of Commissioners to apply the equivalent of the disbursed funds to Basin's future tax payments, we would be negating the clear intention of the legislature that these funds be returned in a specific amount of time. This we cannot do. Therefore, we find that a writ of mandamus ordering the County Treasurer to deposit the amounts paid under protest by Basin should issue. An injunction preventing future disbursement of taxes paid under protest is unnecessary in light of this ruling.

## V. CONCLUSION

Under the Escrow Statute, Wyo. Stat. Ann. § 39–4–101(d), the amount protested by Basin is presumed to be the amount under appeal. However, Basin has an obligation to provide the Board of Commissioners with an explanation of its designation if requested to do so. The County Treasurer does not have the authority to unilaterally determine that the escrowed funds are in excess of the amount under appeal, and, therefore, the duty of the County Treasurer to escrow the amount paid under protest is clear and certain. A writ of mandamus ordering the County Treasurer to deposit the taxes protested by Basin in an interest-bearing escrow account is appropriate. Reversed and remanded.